UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| SHARON NOLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-cv-00153-SEB-DML |
| | ) |
| NANCY A. BERRYHILL, | ) |
| | ) |
| Defendant. | ) |

Report and Recommendation
on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Sharon Nolen is not disabled.

## Introduction

Ms. Nolen applied on July 31, 2012, for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that she has been disabled since April 1, 2008.[1] Acting for the Commissioner of the Social Security Administration

---

[1] During the hearing, counsel for Ms. Nolen "offered to amend [Ms. Nolen's] alleged onset date to comport with the medical evidence of record." (R. 21). After the hearing, counsel for Ms. Nolen requested to amend the alleged onset date to August 1, 2012, "'with the understanding that this will result in a Fully Favorable decision.'" (*Id.*) However, the administrative law judge (ALJ) noted that "the discussion during the hearing regarding the claimant's proper alleged onset date was not predicated upon the issuance of a Fully Favorable decision, but was an effort to align with the medical evidence of record (Exhibit 4D; Testimony). The

following a hearing on September 5, 2014, an administrative law judge (ALJ) found that Ms. Nolen is not disabled. The Appeals Council denied review of the ALJ's decision on June 25, 2016, rendering the ALJ's decision for the Commissioner final. Ms. Nolen timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Nolen's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Ms. Nolen is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration (SSA) has

---

undersigned will accept the claimant's amended alleged onset date." (*Id.*) In her brief to this court, Ms. Nolen asserts that the alleged onset date remains April 1, 2008 since the ALJ did not render a Fully Favorable decision. (Br. at 1). As the ALJ used the August 1, 2012 date in his decision, the court will use the same. The fact remains that Ms. Nolen has not worked since 2008. (R. 30, 268).

2

implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy

3

that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Administrative Proceedings

Ms. Nolen was born in 1955 and was 59 years old at the time of the administrative hearing in September 2014. Her date last insured for DIB was December 31, 2013. Ms. Nolen and a vocational expert (VE) testified at the hearing.

At step one, the ALJ determined that Ms. Nolen had not engaged in substantial gainful activity since August 1, 2012, the amended alleged onset date,[2] through the date last insured. At step two, the ALJ found Ms. Nolen had the following severe impairments: seizure disorder, supraventricular tachycardia, and migraine headaches. At step three, the ALJ concluded that Ms. Nolen did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.

Considering her impairments, the ALJ determined that, through the date last insured, Ms. Nolen had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations. She must avoid even moderate exposure to hazards and must avoid concentrated exposure to temperature extremes, humidity, noise, vibration, dust, fumes, odors, and gases. She cannot climb ladders, ropes, or scaffolds. (R. 26).

With this RFC and based on the ALJ's review of the VE's testimony, the ALJ found at step four that Ms. Nolen was capable of performing her past relevant work as a registered nurse. Therefore, the ALJ determined Ms. Nolen had not been

---

[2] As noted *supra*, Ms. Nolen did not unequivocally agree to amend the alleged onset date, and the ALJ did this unilaterally. That said, Ms. Nolen has not identified any medical evidence to support an earlier onset date.

under a disability from August 1, 2012 through the date last insured. Ms. Nolen now challenges this outcome.

## Analysis

Ms. Nolen maintains the ALJ made two overarching errors: (1) the ALJ failed to account for Ms. Nolen's mental limitations in the RFC findings and hypothetical posed to the VE and (2) the ALJ failed to consider whether Ms. Nolen's migraine headaches equaled a listed impairment.[3] The court considers each argument below, in reverse order.

**I.     Substantial evidence supports the ALJ's step three determination.**

Regarding the ALJ's step three determination, Ms. Nolen asserts that the ALJ failed to consider whether her migraine headaches equaled a listing. Specifically, Ms. Nolen argues that "the ALJ should have considered whether Ms. Nolen's migraine headaches equaled listing 11.03 [Epilepsy—nonconvulsive epilepsy] by assessing the symptoms described in POMS DI 24505.015B.7.b." (Br. at 12).

---

[3] These are the two issues Ms. Nolen identified for the court's consideration (Br. at 4). However, Ms. Nolen raises two additional errors in the body of her brief: (1) failure to account for side effects of Ms. Nolen's medication at step four (Br. at 8) and (2) failure to consider Ms. Nolen's work history in the credibility assessment (Br. at 12, n. 5). The court will address consideration of medication side effects in its discussion of the ALJ's RFC analysis. Ms. Nolen's credibility argument is raised in a footnote in the portion of the brief asserting error at step three. This footnote consists of only four sentences and a lengthy string citation (Br. at 12). The court will not address this argument beyond directing counsel to the Seventh Circuit's recent explanation that "work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). An ALJ's silence on work history "is not enough to negate the substantial evidence supporting the adverse credibility finding." *Id.*

It is the claimant's burden to prove that her condition meets or equals a listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Although the ALJ "bear[s] some responsibility for developing the administrative record . . . [the ALJ is] also free to assume that a claimant represented by counsel has presented her strongest case for benefits . . . ." *Buckhanon v. Astrue*, 368 F. Appx. 674, 679 (7th Cir. 2010) (internal citations omitted).

In his listing discussion, the ALJ determined:

> The claimant's seizure disorder does not meet or equal the criteria of listings 11.02 or 11.03. The claimant's supraventricular tachycardia does not meet or equal the criteria of listing 4.05. There are no listing criteria in Appendix I specific to the evaluation of migraine headaches.

(R. 25).

The ALJ's statement that there are no listing criteria specific to evaluation of migraine headaches is correct. The crux of Ms. Nolen's argument, then, is that the ALJ violated agency policy by not analyzing her migraines in connection with Listing 11.03, the "'most closely analogous listed impairment.'" (Br. at 10).

Contrary to Ms. Nolen's assertion, the ALJ properly analyzed whether Ms. Nolen met or equaled a listing. Ms. Nolen does not dispute the findings of the State Agency consultants that no listing was met or equaled. Ms. Nolen does not point to any medical opinion (nor could she) that the ALJ ignored establishing that she met or equaled a listing. In fact, Ms. Nolen states she is *not* arguing that she equaled the listing; rather, Ms. Nolen seeks remand because the ALJ did not specifically mention Listing 11.03 *in relation to her migraine headaches*. (Br. at 13); cf. Reply

Br. at 3 ("While Plaintiff does believe that she satisfied the criteria of the 'most closely analogous' listing for migraine headaches . . . that is not the central focus of this appeal. Plaintiff's central attack concerns the total absence of any findings or analysis by the ALJ on Plaintiff's migraine headaches at step three.") However, the ALJ discussed Listing 11.03 with respect to Ms. Nolen's seizures and discussed both her migraines and seizures at length throughout his opinion. (R. 26-29). Therefore, even if the ALJ erred in failing to tie Ms. Nolen's migraines specifically to Listing 11.03 in his analysis, any such error is harmless. Substantial evidence supports the ALJ's step three determination.

## II. The ALJ erred by failing to address Ms. Nolen's non-severe mental impairments in formulating the RFC.

Although not articulated as clearly as it could have been, Ms. Nolen argues remand is required because the ALJ did not expressly consider her mental impairment in determining her RFC. The court agrees that this is legal error. Substantial evidence supports the ALJ's determination that Ms. Nolen's mental impairment (based on complaints of depression and anxiety) is non-severe. But because Ms. Nolen did suffer from other severe impairments (including seizure disorder, supraventricular tachycardia, and migraine headaches), the ALJ was required expressly to evaluate whether her non-severe mental impairment imposes any functional restrictions requiring accommodation within the RFC.

### A. The ALJ's Mental Impairment Determination at Step Two

Mental impairments are evaluated by a "special technique" described in 20 C.F.R. § 404.1520a. The first task is deciding whether the claimant has a medically

determinable mental impairment. § 404.1520a(b). The ALJ decided that Ms. Nolen does, and so moved to the second step. The second step requires deciding whether the mental impairment is "severe" by rating "the degree of functional limitation" because of the mental impairment through examining the claimant's functioning in four broad areas: activities of daily living; social functioning; concentration, persistence, and pace (CPP); and episodes of decompensation. (These are also the "B" criteria under the mental impairment listings that are evaluated at step three.) There are five possible ratings for the first three, and their range is: none, mild, moderate, marked, and extreme. For episodes of decompensation, the range, also in increasing severity, is: (a) none; (b) one to two; (c) three; and (d) four or more. § 404.1520a(b), (c).

The ALJ assigned Ms. Nolen the rating of "mild" in the first three categories and "none" in episodes of decompensation. Those ratings meant that Ms. Nolen's mental impairment was non-severe unless evidence otherwise indicated that her mental impairment "more than minimally" limits her abilities to perform basic work activities. The regulation states:

> If we rate the degree of your limitation in the first three functional areas [daily living, social functioning, and CPP] as 'none' or 'mild' and 'none' in the fourth area [episodes of decompensation], we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).

§ 404.1520a(d)(1).

Based on his evaluation of the evidence and his findings that Ms. Nolen's mental impairment caused only mild limitations in the first three functional areas and had not resulted in any episodes of decompensation, the ALJ determined that Ms. Nolen's mental impairment was non-severe. (R. 24). He bolstered this evaluation of the evidence by (1) citing to the 2011 and 2013 findings of the state agency non-examining psychologists, who similarly found that Ms. Nolen was at most only mildly limited in activities of daily living,[4] mildly limited in social functioning and CPP, and had suffered no episodes of decompensation; and (2) relying on the opinion of the 2013 psychological consultative examiner. The ALJ gave great weight to these medical opinions. (*Id.* at 25).

The ALJ gave little weight to the opinion of the 2011 psychological consultative examiner as he found it inconsistent with the medical record, which showed "only mildly impaired mental status examinations and wholly conservative mental health treatment, and with the claimant's reported activities." (*Id.*)

### B. The Effect of Non-Severe Mental Impairments in Determining Residual Functional Capacity

When a claimant has at least one severe impairment (as Ms. Nolen does), she is entitled to have the ALJ evaluate whether the combination of her non-severe and severe impairments impose any functional limitations. The ALJ cannot merely conclude from non-severity that no limitations are necessary. The duty to analyze non-severe impairments in formulating a claimant's RFC to be used at steps four

---

[4] In 2013, the non-examining agency psychologist determined Ms. Nolen had no limitations in activities of daily living. (R. 405).

10

and five is fundamental to the disability programs under the Social Security Act. *See Bowen v. Yuckert,* 482 U.S. 137, 150-51 (1987) (emphasizing duty of Commissioner, when there is at least one severe impairment, to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

      The SSA has been clear that the evaluation of whether a mental impairment is severe is an exercise separate from an evaluation of whether a claimant has functional limitations stemming from even a non-severe mental impairment, assuming that the claimant otherwise suffers from a severe impairment. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments . . . including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity"); SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" . . . and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . . The mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C. . . ."). This court has remanded where the ALJ failed to include any discussion of the plaintiff's non-severe mental impairments in the RFC analysis. *See McGill v Colvin*, No. 1:14-cv-0399-SEB-MJD, 2015 WL 224779, at \*11 (S.D. Ind. Jan. 13, 2015) ("By neglecting to include any discussion of Plaintiff's mental impairments in the RFC analysis, the ALJ . . . plainly did not provide 'a more detailed' analysis of

11

these impairments than he did at step 2, such that he failed to comply with SSR 96-8p.")

Ms. Nolen admits that in many cases, the ALJ's failure to account for such mild limitations in the RFC analysis may be harmless error. (Br. at 6.) "An error is harmless when 'it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record.'" *McGill*, 2015 WL 224779, at *11 (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). However, Ms. Nolen argues the ALJ's error is not harmless here, as the ALJ found she could return to her prior skilled and socially intensive work as a registered nurse. (Br. at 6-7). This argument is well taken, especially because the agency's initial determination was that Ms. Nolen could *not* return to her prior work as a registered nurse.[5] (R. at 79, 85).

The Commissioner maintains that the ALJ properly found Ms. Nolen's mental impairment to be non-severe. (Br. at 10). But the Commissioner cannot merely conclude from non-severity that no limitations are necessary. The Commissioner also argues, "Restriction in the RFC finding for a non-severe impairment is only necessary where 'the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities.'" (*Id.* at 11) (citing 20 C.F.R. §§ 404.1520a(d)(1), 404.1521)). As discussed above, that is not the law.

---

[5] On reconsideration, the agency found it did not have sufficient information to determine whether Ms. Nolen could return to her prior work. (R. 91).

12

Importantly, the fact the ALJ concluded for purposes of step two that Ms. Nolen's mental impairment was properly rated as "mild" and not "none" in the categories of daily living activities, social functioning, and CPP does not mean that an RFC *must* include mental functioning limitations. The point is that when mental impairments are not severe, they still must be evaluated for purposes of steps four and five. The court finds only that the ALJ must make an assessment of Ms. Nolen's mental impairment in the context of determining an appropriate RFC.

### C. Consideration of Adverse Side Effects of Medication

In the context of Ms. Nolen's argument regarding the ALJ's RFC analysis, she devotes one paragraph to the assertion that the ALJ's failure to address the side effects of her medication in his step four determination was "independent legal error." As Ms. Nolen acknowledges, however, the ALJ determined Ms. Nolen "has been treated with medication, without any apparent complication" for her seizure disorder. (R. 28). As discussed above, the ALJ analyzed Ms. Nolen's migraines and seizures at length throughout his opinion. (R. 26-29). That analysis specifically included consideration of several of the side effects enumerated in Ms. Nolen's brief. (*See* R. 28.) This argument, at bottom, asks the court to reweigh the evidence. That task is inappropriate for the court to undertake.

### Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: 7/26/17

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system